**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| In re:<br><br>MICHAEL CHARLES DENZIN and<br>ANNE MARIE DENZIN,<br><br>　　　　Debtors. | Case No. 15-10277-RGM<br>(Chapter 7) |
| JUDY A. ROBBINS, UNITED STATES<br>TRUSTEE FOR REGION FOUR,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MICHAEL CHARLES DENZIN and<br>ANNE MARIE DENZIN,<br><br>　　　　Defendants. | Contested Matter |

## MEMORANDUM OPINION

The question presented in this chapter 7 case is whether the debtors may claim their two mortgage debts as expenses in their chapter 7 means test calculation when they intend to surrender the property. The trustee and the debtors agree that if the debtors may claim the two mortgage debts then there is no presumption of abuse under 11 U.S.C. §707(b)(2); otherwise, there is a presumption of abuse.[1] This question was previously decided by this court.[2] *In re Crawley,* 412 B.R. 777

---

[1] The United States Trustee argues, in the alternative, that the case should be dismissed for abuse under §707(b)(3). An evidentiary hearing will be scheduled to consider the alternative relief sought.

[2] There is a split of authority among the bankruptcy courts in the Fourth Circuit. *Compare In re Harvey,* 407 B.R. 867, 871-87 (Bankr.W.D.Va. 2009) and *In re Demesones,* 406 B.R. 711 (Bankr.E.D.Va. 2008) (both allowing expense), *with In re Hamilton,* 513 B.R. 292 (Bankr.M.D.N.C 2014) (disallowing expense). The majority of bankruptcy court decisions before *Lanning* and *Ransom* – chapter 13 cases in which the Supreme Court held that the
(continued...)

1

(Bankr.E.D.Va. 2009); *In re Demesones,* 406 B.R. 711 (Bankr.E.D.Va. 2008). The United States Trustee urges the court to overrule these decisions in light of the Court of Appeals' decision in *Morris v. Quigley (In re Quigley),* 673 F.3d 269 (4th Cir. 2012). *Quigley* rests principally on *Hamilton v. Lanning,* 560 U.S. 505, 130 S.Ct. 2464 (2010), but also *Ransom v. FIA Card Services, N.A.,* 562 U.S. 61, 131 S.Ct. 716 (2011). All three are chapter 13 cases.

*Lanning* addressed the question of the proper calculation of the debtor's "projected disposable income." *Id.* 560 U.S. at 510; 130 S.Ct. at 2469. "Projected disposable income" in §1325(b)(1)(B) is not defined although "disposable income" is defined in §1325(b)(2), for purposes of §1325(b) only, as the current monthly income received by the debtor less amounts reasonably necessary to be expended. Current monthly income, in turn, is defined in §101(10A). It is the debtor's average monthly income for the six months preceding the filing of the petition.[3] The definition makes no adjustment for unusually high or low income received during the six-month period. The six-month average may be, but is not necessarily, helpful in determining what an individual can reasonably be expected to earn on a regular basis during the three or five years of a chapter 13 plan. In *Lanning* the debtor received a one-time buyout payment during the six-month period. The chapter 13 trustee averaged the one-time buyout payment into the debtor's regular monthly income and computed a chapter 13 plan payment that the debtor would not be able to sustain.

---

[2](...continued)
chapter 13 means test is forward-looking – held that the chapter 7 means test was a mechanical, snapshot of the debtor's financial circumstances. *In re Fredman,* 471 B.R. 540, 544-545 (Bankr.S.D.Ill. 2012). After *Lanning* and *Ransom,* some bankruptcy courts extended the Supreme Court's chapter 13 reasoning to chapter 7 cases, however, a majority continues to hold that chapter 7 debtors may deduct secured payments on collateral they intend to surrender. *Id.* at 550 (collecting cases).

[3] The debtor's "current monthly income" is not the debtor's actual monthly income. Adjustments are made to the debtor's actual monthly income to derive the debtor's current monthly income. For example, Social Security payments are excluded from current monthly income. 11 U.S.C. §101(10A)(B).

The Supreme Court focused on the adjective modifying "disposable income," the word "projected." It held that, "While a projection takes past events into account, adjustments are often made based on other factors that may affect the final outcome." *Lanning,* 560 U.S. at 514; 130 S.Ct. at 2472. If there are known or virtually certain changes in the debtor's income from the six-month average, the changes are to be taken into account in determining the debtor's chapter 13 plan payment. The six-month average is the starting point in chapter 13.

> [A] court . . . should begin by calculating disposable income, and in most cases, nothing more is required. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expense.

*Id.* 560 U.S. at 519; 130 S.Ct. at 2475. It is a two-step process. First, the disposable income is calculated. Second, the disposable income is projected into the future and any appropriate adjustment is made.

*Ransom,* also a chapter 13 case, addressed the expense side of the debtor's budget. The debtor sought to take the ownership allowance from the National Standards for a car that was fully paid. This would have been entirely appropriate had the car not been fully paid.[4] The Supreme Court focused on the adjective to National Standard, "applicable." It held that where there was no car loan to be paid, the National Standard was not applicable.

In *Quigley,* the chapter 13 debtor had three secured debts she was not going to pay. Two were secured by ATVs which she was going to surrender. The third was a note she co-signed that was secured by a truck she neither owned or drove. She calculated her expenses by including the contractually due payments to determine the amount of her chapter 13 plan payment. This would have

---

[4]The National Standard is a hypothetical expense, not an actual expense.

been proper had she intended to pay the secured debts during her plan. The Court of Appeals held that the three payments could not be included as expenses.

*Quigley* flows naturally from *Lanning* and *Ransom*. All three cases were chapter 13 cases determining the proper amount of the chapter 13 plan payment. All three involved pre-petition income (*Lanning*) or expenses (*Ransom* and *Quigley*) that the debtors knew at the confirmation hearing were different from their pre-petition income or expenses. In *Lanning,* it was known that the buyout bonus was a one-time payment that would overstate the debtor's post-confirmation income. In *Ransom* and *Quigley,* it was known there was no car payment (*Ransom*) or that the secured debts would not be paid by the debtor post-confirmation (*Quigley*). Had the income or expense been included in the calculation of the chapter 13 plan payment, either the plan would have failed because the plan payment would have been too high, or the Congressional objective of reducing abuse by requiring debtors to pay their "projected disposable income" in the chapter 13 plan would have been frustrated. The proper analysis is a forward-looking analysis. "Projected disposable income" is, as the Supreme Court held, a projection of future income. The analysis is founded on the adjective "projected" in §1325(b)(1)(B). It achieves the Congressional objective of assuring chapter 13 debtors are making their best efforts in repaying their debts.

The means test for chapter 7 eligibility serves a different purpose. It is designed to distinguish the honest but unfortunate debtor who is entitled to chapter 7 relief from the honest but less unfortunate debtor who is capable of repaying all or part of his debts and who is not entitled to chapter 7 relief. The chapter 7 means test looks to a debtor's hypothetical budget. Basically, it blends uniform allowable expenses taken from the National Standards and Local Standards prepared by the Internal Revenue Service with contractual loan payments and various other modifications. 11 U.S.C. §707(b)(2)(A). If the resulting monthly calculation multiplied by 60 is more than $12,475 or, if less,

the greater of 25% of the debtor's nonpriority unsecured claims or $7,475, there is a presumption of abuse in proceeding under chapter 7.

If a prospective chapter 7 debtor satisfies the §707(b)(2) means test, he must also satisfy a second test to qualify for chapter 7, §707(b)(3). The second test also seeks to distinguish debtors who could pay their creditors in whole or in part and direct them to chapter 13, from those who cannot and may enter chapter 7. Section 707(b)(3) requires that the petition be filed in good faith and that the totality of the debtor's circumstances not demonstrate abuse. The second test looks at the debtor's actual post-petition income and expenses – rather than the blend of hypothetical and actual income and expenses – as well as other factors.

There is no language in §707(b) that is forward-looking as there is in §1325(b) ("*projected disposable income*"). While §707(b)(2)(A) and (B) are referenced in §1325(b)(3), §1325(b)(3) is a reference from §1325(b)(2) which in turn is a reference from §1325(b)(1)(B). It is §1325(b)(1)(B) that injects the modifier "projected" and the forward-looking aspect of the chapter 13 means test. *Lanning* held that this included known or virtually certain changes in income. *Quigley* applied it to expenses.

The calculation of monthly expenses in a chapter 7 case under §707(b)(2) is mechanical. The tables are clearly identified. The section uses mandatory language – "shall" – in referring to the tables. Debt payments are expressly excluded under §707(b)(2)(A)(ii). Secured debts are expressly included under §707(b)(2)(A)(iii) which instructs how they will be calculated. They are calculated not on the actual payment when the petition is filed but on the average amount of the payments "contractually due to secured creditors" over 60 months.

The chapter 7 means test in §707(b)(2) and the chapter 13 means test in §1325(b) do not necessarily result in the same amount. This is understandable because they serve two different

5

purposes, one to guard the door to chapter 7 relief and the other to determine how much should be paid to creditors in chapter 13. The chapter 13 means test uses the phrase "projected disposable income" while the chapter 7 means test only uses the phrase "disposable income." The one phrase allows for adjustments for known or virtually certain future changes. The other does not. The chapter 7 means test is not forward-looking, but is a static snapshot. The snapshot chapter 7 means test is supported by a complementary dynamic chapter 7 abuse test that looks not only to the debtor's actual financial affairs but also surrounding circumstances. Together, they provide a straight-forward, bright-line test, §707(b)(2), supported by a dynamic, customized test, §707(b)(3). The first looks to a debtor's hypothetical budget; the second emphasizes the debtor's actual budget. Between the two of them, debtors who should not be in chapter 7 should be identified and redirected to chapter 13.

In light of the language Congress chose, the context of the two means tests, and their purposes, the United States Trustee's argument cannot be accepted. *Ransom,* 562 U.S. 64, 131 S.Ct. 721 (referring to the "text, context, and purpose of the statutory provision"); *Milner v. Dept. of Navy*, 562, 580, 131 S.Ct. 1259, 1270 (2011) (finding an interpretation of the Freedom of Information Act "has no basis in the text, context or purpose of FOIA."); *Andrus v. Allard,* 444 U.S. 51, 60, 100 S.Ct. 318, 324 (1979) (holding that the "text, context, and purpose of the Migratory Bird Treaty Act support the Secretary's interpretive regulations."). The language of the two means tests should be given their plain meaning. The same phrase, "disposable income," is not read differently in §707 and §1325. In §1325(b)(1)(B), the phrase has a modifier – the word "projected" – that is not present in §707(b). This modifier changes the static chapter 7 means test to the forward-looking chapter 13 means test. The context is different. One is within the context of chapter 7; the other, chapter 13. The two chapters have fundamentally different approaches to bankruptcy. One is liquidation and an immediate discharge; the other regular payments over 36 or 60 months and a delayed discharge. The purposes

are different. One is to guard the door to chapter 7 relief; the other to determine the correct chapter 13 plan payment.

*Quigley* does not change this court's analysis in *Crawley* and *Demesones* that §707(b)(2)(A)(iii) means that all secured payments contractually due – not just the secured payments contractually due and which the debtor intends to make – are properly included as expenses in the chapter 7 means test. Such changes are accounted for in the dynamic means test for chapter 7, §707(b)(3). *Quigley* does not extend its analysis of the chapter 13 means test to the chapter 7 means test. The analysis in *Crawley* and *Demesones* remains sound.

The United States Trustee's motion to dismiss for abuse under §707(b)(2) will be denied and the matter will be set for an evidentiary hearing on the alternative relief requested under §707(b)(3).

Alexandria, Virginia
August 6, 2015.

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Bradley D. Jones
Jeffery T. Martin, Jr.

19220